UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION


KITCHI DITLIHI TRUST BY AND
THROUGH TRUSTEE ROBERT
ARNAZ RACKARD,

      Plaintiff,

v.                            Case No: 6:24-cv-1877-JSS-RMN

CHAD K. ALVARO, VINCENT
FALCONE, III, JONATHAN
MEISELS, CARDINGTON
MANAGEMENT LLC,
NATIONSTAR MORTGAGE LLC,
JAY BRAY, KURT JOHNSON, and
PHIL DIAMOND,

      Defendants.
_____/

## ORDER

On October 18, 2024, Plaintiff, the Kitchi Ditlihi Trust (the Trust), by and through its trustee, Robert Arnaz Rackard, filed a complaint against Defendants. (Complaint, Dkts. 1, 1-1.) For the reasons outlined below, the Complaint is dismissed without prejudice because the court lacks subject matter jurisdiction.

## BACKGROUND

On March 28, 2022, Defendant Nationstar Mortgage LLC (Nationstar) filed a complaint to foreclose property owned by Rackard. *Nationstar Mortg. LLC v. Rackard*, 2022-CA-002636-O (Fla. Cir. Ct. Mar. 28, 2022). On April 28, 2023, after a bench trial, Judge Vincent Falcone III ordered the foreclosure of the property (the

Foreclosure Order).  *Id.* (Apr. 28, 2023).  Although Rackard failed to appear at the trial, he has since protested the Foreclosure Order.  *Id.* (Sept. 19, 2024).

Plaintiff repeatedly presented the argument to the state court that he never executed a mortgage agreement with Nationstar, and thus, that they have no claim against him.  *See id.* (July 17, 2024) ("The plaintiff has failed to provide an Original contract between ROBERT ARNAZ RACKARD and [Nationstar] dba Mr. Cooper time and time and time again. No Contract! No Case!").  However, Judge Chad K. Alvaro, who had become the presiding judge in Rackard's foreclosure case, determined that the Foreclosure Order was properly entered.

> With respect to certain assertions contained in [Rackard]'s Objection to Disbursement they are addressed as follows. [Rackard] does not have a counterclaim against [Nationstar]; a default was entered against [Rackard] on July 14, 2022 which has not been set aside, and in any event, the counterclaim would have been tried at the trial on April 28, 2023, which [Rackard] did not appear for. . . . [Nationstar] does not have to prove that [it] loaned [Rackard] any money or has a contract with [Rackard]; [Nationstar] only must demonstrate that it is the holder of the note evidencing that money was loaned to [Rackard] by a predecessor in interest, which [Nationstar] did at the trial on April 28, 2023, which [Rackard] did not appear for.

*Id.* (Sept. 19, 2024) (internal citations omitted); *accord id.* (July 26, 2024).  Florida's Sixth District Court of Appeal affirmed the Foreclosure Order over Rackard's protestations, *Rackard v. Nation Star Mortg., LLC*, 381 So. 3d 610 (Fla. Dist. Ct. App. 2023) (per curiam), and subsequently barred him from filing additional pro se filings in the matter, *Rackard v. Nationstar Mortg., LLC*, No. 6D23-2716, 2024 WL 1953156, at *1 (Fla. Dist. Ct. App. May 3, 2024) ("Due to Appellant Robert Arnaz Rackard's

apparent abuse of the legal process by his repetitive and frivolous pro se filings contesting the foreclosure judgment entered against him . . . this Court issued an order directing Appellant to show cause why he should not be prohibited from future pro se filings. . . .  To conserve judicial resources, Appellant is prohibited from filing with this Court any further pro se filings [in this matter].").

Defendant Cardington Management, LLC (Cardington) purchased the foreclosed property at auction on June 4, 2024.  (*See* Dkt. 32 at 2, 15.)  On July 29, 2024, the Clerk of the Court for the Ninth Judicial Circuit of Florida "issued a Certificate of Title on the [p]roperty in the name of Cardington."  (*Id.* at 15.)  On October 7, 2024, Cardington filed a motion for writ of possession "because Rackard was still claiming possession [of the property] despite losing trial [sic] and his appeal." (*Id.* at 2.)  Accordingly, on November 8, 2024, Judge Alvaro entered an order granting Cardington's writ of possession, determining that Rackard "ha[d] unlawfully maintained possession of the [p]roperty despite the transfer of title to Cardington," and "directing the Sheriff of Orange County, Florida, to remove . . . Rackard and all other occupants from the [p]roperty."  *Rackard*, 2022-CA-002636-O (Nov. 8, 2024)

On October 18, 2024, Plaintiff initiated this action alleging various state and constitutional claims against Defendants.  (Dkts. 1, 1-1.)  These allegations center around Plaintiff's claim that "Defendants engaged in a conspiracy to unlawfully restrict Plaintiff's property rights by manipulating the foreclosure process and exploiting the legal system for financial gain."  (Dkt. 1 at 4; *accord* Dkt. 1-1 at 1 ("Defendants . . . conspir[ed] to restrict Plaintiff's ability to maintain property

ownership and . . . manipulat[ed] the foreclosure process to achieve unlawful gains at Plaintiff's expense.").) Specifically, Plaintiff states that the "mortgage company and its agents effectively monopolized the foreclosure process by fabricating claims to force the sale of Plaintiff's property and block Plaintiff from exercising rightful ownership." (Dkt. 1 at 4; Dkt. 1-1 at 3.) This, Plaintiff claims, resulted in Defendants Judge Falcone and Judge Alvaro "knowingly grant[ing] an improper judgment of foreclosure despite evidence provided by Plaintiff that the mortgage company did not have standing and admitted that they did not loan the funds for the purchase of the property." (Dkt. 1-1 at 2–3.)

Plaintiff alleges violations of the Federal Constitution (Count I), the Florida Constitution (Count II), and the Sherman Act (Count III), various state law claims (Counts IV–V), judicial misconduct (Count VI), and violations of the Real Estate Settlement Procedures Act (RESPA) (Count VII). (*Id.* at 4–6.) Plaintiff argues that the foreclosure of his property was improper and procured through fraud. (*See id.* at 3 ("The property was wrongfully sold through foreclosure, and a fraudulent deed was subsequently filed by [Cardington] in the public records office."). Plaintiff seeks a declaration "that the foreclosure and subsequent sale of the property were unlawful and void," "[a]n order canceling the fraudulent deed filed by [Cardington]," "[i]njunctive relief prohibiting further actions against the Plaintiff's property without proper legal standing," "[m]onetary damages, including compensatory and punitive damages, for the wrongful foreclosure, loss of property, emotional distress, and legal costs" totaling $265,371,628, "[a]n order sanctioning Defendant Vincent Falcone III

and Chad K. Alvaro for violation of judicial conduct and awarding Plaintiff appropriate remedies," and "[a]n order holding Defendants [Nationstar], Jay Bray, Kurt Johnson, Jonathan Meisels, and [Cardington] liable for violating antitrust laws, trust law, and other applicable statutes." (Dkt. 1 at 5; Dkt. 1-1 at 6.)

Upon sua sponte review of the docket, the court determined that it might lack subject matter jurisdiction under the *Rooker-Feldman*[1] doctrine. (Dkt. 18.)  The court ordered Plaintiff to brief the issue for the court's consideration. (*Id.* at 2–3.)  Plaintiff and Cardington have since filed briefs on the issue. (Dkts. 21 & 32.)

## APPLICABLE STANDARDS

"Federal courts are courts of limited jurisdiction." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).  The party seeking to invoke the court's jurisdiction "has the burden of establishing, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction." *Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1085–86 (11th Cir. 2010) (citing Fed. R. Civ. P. 8(a)(1); *McCormick v. Aderholt,* 293 F.3d 1254, 1257 (11th Cir. 2002)).  If a court lacks jurisdiction, its "only remaining function is to announce that [it] lack[s] jurisdiction and dismiss the cause." *Nationwide Mut. Ins. Co. v. Barrow*, 29 F.4th 1299, 1301 (11th Cir. 2022) (citing *United States v. Amodeo*, 916 F.3d 967, 971 (11th Cir. 2019)).

---

[1] *See Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923).

## ANALYSIS

Under the *Rooker-Feldman* doctrine, federal district courts are barred from reviewing, reversing, or invalidating a final state court decision. *Dale v. Moore*, 121 F.3d 624, 626 (11th Cir. 1997). While it has been cautioned that *Rooker-Feldman* is narrow and "will almost never apply," *Behr v. Campbell*, 8 F.4th 1206, 1212 (11th Cir. 2021), "almost is not never," *Efron v. Candelario*, 110 F.4th 1229, 1235 (11th Cir. 2024). "The question is whether the case has been 'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Id.* (quoting *Behr*, 8 F.4th at 1212). Accordingly, "a party losing in state court is barred from seeking what in substance would be appellate review of the state court judgment in a United States District Court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Id.* (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994)). "If the source of the plaintiff's injury is the state-court judgment itself, then *Rooker-Feldman* applies." *Id.* "The doctrine extends not only to constitutional claims presented or adjudicated by a state court, but also to claims that are 'inextricably intertwined' with a state court judgment." *Siegel v. LePore*, 234 F.3d 1163, 1172 (11th Cir. 2000) (en banc) (citing *Feldman*, 460 U.S. at 482 n.16). "A claim is inextricably intertwined if it would 'effectively nullify' the state court judgment, or it 'succeeds only to the extent that the state court wrongly decided the issues.'" *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009) (internal citation

omitted) (quoting *Powell v. Powell*, 80 F.3d 464, 467 (11th Cir. 1996), and *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1332 (11th Cir. 2001)).  "[A] court should follow a claim-by-claim approach when determining whether *Rooker-Feldman* bars a plaintiff's claims from review in a federal district court." *Efron*, 110 F.4th at 1236.  "The question isn't whether the whole complaint seems to challenge a previous state court judgment, but whether resolution of each individual claim requires review and rejection of a state court judgment." *Id.* (quoting *Behr*, 8 F.4th at 1213).

Here, a review of each count of Plaintiff's Complaint demonstrates that Plaintiff seeks nothing other than nullification of the state-court proceeding.  Count I alleges a violation of the due process clause of the Fourteenth Amendment and states that "Defendants violated Plaintiff's due process rights by initiating foreclosure proceedings without providing proper notice or service, as required under state and federal law, and by failing to respond to Plaintiff's lawful requests for validation of the mortgage." (Dkt 1-1 at 4.)  Count II alleges a violation of the Florida Constitution's homestead provision and states that "Defendants violated Plaintiff's rights under the Florida Constitution by foreclosing on Plaintiff's homestead property without legal authority or proper service of process." (*Id.*)  Count III alleges a violation of the Sherman Act, 15 U.S.C. §§ 1–7, and states that Defendants "engage[d] in antitrust competitive practices by conspiring to restrict Plaintiff's ability to maintain ownership of the property," "monopolized the foreclosure process . . . block[ed] Plaintiff from asserting [its] legal [r]ights," and "engag[ed] in unlawful actions that manipulated property ownership and caused the unlawful sale of Plaintiff's property." (*Id.* at 4–5.)

Count IV alleges fraudulent transfer and recording under Florida law and states that Cardington "fraudulently recorded a deed that did not reflect any legal transfer of property from Plaintiff's trust." (*Id.* at 5.) Count V alleges a breach of Florida's trust law and states that "Defendants . . . wrongfully ignor[ed] the trust ownership of the property and proceed[ed] with foreclosure and sale without regard to the legal protections afforded to property held in trust." (*Id.*) Count VI alleges judicial misconduct and "[v]iolation of [c]anon [l]aw" and states that "Defendant[s] Chad K. Alvaro and Vincent Falcone III violated Canon 1, Canon 2, and Canon 3 of the Code of Judicial Conduct by failing to uphold the integrity, independence, and impartiality of the judiciary, and by issuing a judgment in favor of Defendants despite clear evidence of their lack of standing." (*Id.*) Finally, Count VII alleges violation of the RESPA, 12 U.S.C. §§ 2601–2617, and states that "Defendants . . . fail[ed] to provide necessary disclosures and proof of loan funding, and . . . wrongfully pursu[ed] foreclosure without proper documentation of the mortgage transaction." (*Id.* at 6.)

Thus, each count of Plaintiff's Complaint, and indeed the Complaint as a whole, asserts that the Foreclosure Order was entered as the result of fraud and in violation of state and federal law. (*See, e.g.*, Dkt. 1-1 at 1 ("Plaintiff . . . brings this action to seek remedy for violations of the Florida Constitution, the U.S. Constitution, Canon law, 15 U.S.C. [§§ 1–7] . . .[,] and various federal and state laws protecting homeowners and trust property. The Plaintiff's property, protected under homestead, has been illegally foreclosed and sold without proper notice or legal standing by the Defendants.").) *Rooker-Feldman* presents an inescapable bar to these claims. *Fenn v.*

*Litton Loan Servicing*, No. 19-61321-CIV-COHN/SELTZER, 2019 U.S. Dist. LEXIS 104353, at *4–5 (S.D. Fla. June 20, 2019) ("Other courts have confronted similar claims seeking to vacate state court foreclosure judgments on the grounds that they were procured by fraud. In each case, the defendants allegedly perpetrated some sort of fraud upon the court, the complained-of injury was a wrongful foreclosure judgment, and the remedy the plaintiffs sought was an order by the federal district court setting aside the state court foreclosure judgment. In each case, the court held that the claims were barred by *Rooker-Feldman*." (collecting cases; internal citations omitted)). To grant Plaintiff the relief it seeks under any of its claims, this court would have to determine that the Foreclosure Order was entered in error, but this is precisely what *Rooker-Feldman* bars. *See Figueroa v. Merscorp, Inc.*, 766 F. Supp. 2d 1305, 1324 (S.D. Fla. 2011) ("[The plaintiff]'s federal claims can only succeed to the extent the Florida court erred, and the Court cannot grant [the plaintiff] his requested relief without disturbing the Florida foreclosure judgment. It is for the state appeals courts and the U.S. Supreme Court to tell the state court it was wrong. This Court has no such role." (internal citation omitted)).

Because each claim would require the court to review and reject the Foreclosure Order, they are all barred under *Rooker-Feldman*. *See Efron*, 110 F.4th at 1237–38 (determining that each of the plaintiff's counts "tick[ed] all the *Rooker-Feldman* boxes" because "[a]t heart, they challenge the result of the [state court's] decisions themselves, seeking to nullify the decisions' effect by mandating the return of the money the [state court's] decisions ordered [the plaintiff] to pay and explicitly seeking a finding that the

[state court's] decisions were 'wrongful,' 'corruptly procured[,]' and 'did not entitle the [defendants] to the money they were paid"). These claims are inextricably intertwined with the Foreclosure Order because each could "succeed[] only to the extent that the state court wrongly decided the issues." *See Casale*, 558 F.3d at 1260; *see also Gibson v. Florida*, No. 8:22-cv-2247-WFJ-TGW, 2023 WL 2571031, at *2 (M.D. Fla. Mar. 20, 2023) ("[The plaintiff] seeks to re-litigate the issue decided by the state court: whether the real property at issue was properly foreclosed. *Rooker-Feldman* bars the [p]laintiff from relitigating the same issues here, although cloaked as a § 1983 claim and other various torts. . . . [The plaintiff]'s claims would either nullify the state courts' judgments or would succeed only to the extent that the state courts wrongly decided the issues. The [c]ourt lacks subject-matter jurisdiction over these inextricably intertwined claims.").

In its court-ordered brief on the issue, Plaintiff raised a number of arguments in an attempt to avoid dismissal under *Rooker-Feldman*. The court considers each of Plaintiff's arguments in turn.

Plaintiff's argument that *Rooker-Feldman* does not apply because the "requested relief does not involve a reversal or modification of the state court judgment" is unavailing for two reasons. (Dkt. 21 at 3.) First, the relief Plaintiff seeks would indeed require this court to reverse the state court's judgment or to undo the effects of that court's judgment. (*See* Dkt. 1-1 at 6 (requesting "[d]eclaratory judgment that the foreclosure and subsequent sale of the property were unlawful and void," "[a]n order canceling the fraudulent deed filed by [Cardington]," and "[i]njunctive relief

- 10 -

prohibiting further actions against Plaintiff's property without proper legal standing").

Second, even if Plaintiff was not directly seeking the reversal of the state court's

judgment, "the *Rooker-Feldman* doctrine does not cease to operate simply because the

plaintiff requests something other than the vacatur of a state decision.  Whether a state

court judgment caused the plaintiff's injury remains the question for a federal court

regardless of the form in which the plaintiff brings his or her claims." *Efron*, 110 F.4th

at 1236.  Accordingly, that Plaintiff seeks damages awards and sanctions against

Defendants—in addition to relief that would directly overturn the state court's

judgment—does not preclude the court from determining that this case is nothing other

than an appeal of the state court's judgment.

> [A] plaintiff's claim for relief does matter. . . .  But the claim
> for relief, alone, is not determinative: the question is still
> whether the substance—if not the form—of a plaintiff's
> claim requires a district court to "review" and "reject" a
> state court judgment. . . . In this case, although [the
> plaintiff] does not ask us to overturn the state court's
> judgment, there is no distinguishing between the damages
> that the [defendant]'s alleged constitutional violations
> caused [the plaintiff] and the state court's disposition of [the
> plaintiff]'s case.

*Id.* at 1238.

The cases Plaintiff cites in support of its argument that *Rooker-Feldman* does not

apply are readily distinguishable.  In *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*,

the Supreme Court determined that the petitioner there "ha[d] not repaired to federal

court to undo the [state-court] judgment in its favor," 544 U.S. 280, 293 (2005), which

is precisely what the court finds Plaintiff here is seeking to do.  "Rather, it appear[ed]

[petitioner] filed suit in Federal District Court (only two weeks after [respondent] filed in [state court] and well before any judgment in state court) to protect itself in the event it lost in state court on grounds (such as the state statute of limitations) that might not preclude relief in the federal venue." *Id.* at 293–94.   Plaintiff's own arguments demonstrate that *Exxon* is inapposite.  (*See* Dkt. 21 at 3 ("Rather than challenging the state's decision itself, the [Plaintiff]'s claims are directed toward procedural injustices and constitutional violations that took place during those proceedings.").)  Similarly, the Supreme Court's decision in *Skinner v. Switzer*, 562 U.S. 521 (2011), does not alter this court's conclusion that *Rooker-Feldman* bars Plaintiff's claims.  The Court there held that, while "a state-court decision is not reviewable by lower federal courts, . . . a statute or rule governing the decision may be challenged in a federal action." *Id.* at 532.  Plaintiff here does not so seek to challenge any statute or rule undergirding the state court's judgment, and indeed the language of *Skinner* further supports the application of *Rooker-Feldman* in this case.  *See id.* at 531 (noting that claims barred by *Rooker-Feldman* "fit this pattern: The losing party in state court filed suit in a U.S. District Court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking federal-court review and rejection of that judgment").

Likewise, Plaintiff's argument that it was not a party to the state court action is of no moment.  (Dkt. 21 at 4.)  *Rooker-Feldman* cannot be avoided through pretext. *May v. Morgan County*, 878 F.3d 1001, 1005 (11th Cir. 2017) ("Although narrow in its

application, a state court loser cannot avoid *Rooker-Feldman*'s bar by cleverly cloaking her pleadings in the cloth of a different claim. Pretext is not tolerated."). While the Trust was not a party to the state court proceeding, Rackard, through whom the Trust is proceeding in this action, was. *See* 2022-CA-002636-O (Fla. Cir. Ct. Mar. 28, 2022). In effect, Rackard has merely added the Trust as a plaintiff, a maneuver that is insufficient to preclude dismissal under *Rooker-Feldman*. *See Kaskebar v. Ivy Station Cmty. Ass'n*, No. 1:18-cv-05928-JPB, 2020 WL 5792634, at *7 (N.D. Ga. Jan. 13, 2020) ("[C]ontrary to [the p]laintiffs' assertions, simply adding [a plaintiff] to this case does not automatically remove it from the ambit of the *Rooker-Feldman* doctrine."); *see also Newman v. Indiana*, 129 F.3d 937, 942 (7th Cir. 1997) ("[T]he *Rooker-Feldman* doctrine . . . cannot be gotten around by changing the *dramatis personae*."). Indeed, when Plaintiff completed the form complaint in this case, it listed "Robert[]Arnaz[]Rackard" as the sole Plaintiff. (*See* Dkt. 1 at 2.)

Plaintiff's final argument, that *Rooker-Feldman* "does not bar federal jurisdiction when the state court judgment was procured through fraud," also fails. (Dkt. 21 at 4.) Plaintiff cites no caselaw establishing such an exception. (*See id.*); *see Crossdale v. Crossdale*, 598 F. App'x 697, 700 (11th Cir. 2015) ("[The plaintiff] also contends that the state court judgments resulted from fraud on the court and should thus be exempted from *Rooker-Feldman*. Even if this court had recognized a fraud exception, which it has not, [the plaintiff]'s argument is little more than a claim that the state court result was wrong and the only possible reason for it was fraud."). It is true that

other circuit courts of appeals have recognized an exception to *Rooker-Feldman* in the case of extrinsic fraud on the court, "where the alleged fraud effectively denied the plaintiff an opportunity to raise her federal claim in the state court litigation." *Fenn*, 2019 U.S. Dist. LEXIS 104353, at *6–7 (collecting cases). Even if the Eleventh Circuit had recognized such an exception—which it has expressly declined to do, *see Velazquez v. S. Fla. Credit Union*, 546 F. App'x 854, 859 (11th Cir. 2011)—it would not apply here because the fraud Plaintiff alleges is *intrinsic* fraud, as it "pertains to an issue involved in a judicial proceeding" rather than something that would have "kep[t] [Plaintiff] . . . from knowing about or asserting [its] rights." *Valentine v. BAC Home Loans Servicing, L.P.*, 635 F. App'x 753, 757 (11th Cir. 2015); *see id.* ("There is no recognized exception to the *Rooker-Feldman* doctrine for intrinsic fraud. Such an exception could effectively gut the doctrine by permitting litigants to challenge almost any state-court judgment in federal district court merely by alleging that the other party lied during the state-court proceedings.").

Moreover, because Plaintiff's claim of fraud can prevail only at the expense of the state court judgment itself, it is barred by *Rooker-Feldman*. *See Spitaleri v. Bank of Am., N.A.*, No. 5:17-cv-518-T-33PRL, 2018 WL 5024336, at *4 (M.D. Fla. Oct. 17, 2018) ("In sum, the fraud claim in this action appears a circuitous but unmistakable attempt to impugn the validity of the foreclosure judgment. . . . Therefore, the fraud claim is barred by the *Rooker-Feldman* doctrine . . . ."). This is especially true where, as here, Plaintiff repeatedly raised allegations of fraud before the state court, all of

which were fully ruled on.  *See, e.g.*, 2022-CA-002636-O (Fla. Cir. Ct.) July 12, 2024;

*Spitaleri*, 2018 WL 5024336, at *4 ("The issues of the fraud in this case could have been

raised in the state court foreclosure before final judgment was entered.  It would not

change the result that [the p]laintiff alleges he did not know or could not have

reasonably discovered the facts he now knows until he retained his attorney in this

case.").

      "The complaint at issue here was brought by a state-court loser complaining of

injuries caused by state-court judgments rendered before the district court proceedings

commenced and inviting district court review and rejection of those judgments."

*Efron*, 110 F.4th at 1238 (cleaned up).  Indeed, because Plaintiff effectively seeks to

appeal a state court's foreclosure judgment, the court stands on especially sure footing

in dismissing this case under *Rooker-Feldman*.  *See Goldman v. HSBC Bank USA*, No.

9:15-CV-80956, 2015 WL 5269809, at *1 (S.D. Fla. Sept. 10, 2015) ("Notably, the

Eleventh Circuit and many district courts have applied the *Rooker-Feldman* doctrine to

dismiss actions where a plaintiff was seeking, in reality, to challenge state-court

foreclosure judgments." (collecting cases)).  As such, the court lacks subject matter

jurisdiction over this case—all that is left is to dismiss it without prejudice.  *See Scott v.*

*Frankel*, 606 F. App'x 529, 533 (11th Cir. 2015) ("[A] *Rooker-Feldman* dismissal is a

dismissal for lack of subject matter jurisdiction, and '[a] dismissal for lack of subject

matter jurisdiction is not a judgment on the merits and is entered without prejudice.'"

(quoting *Stalley v. Orlando Reg'l Healthcare Sys.*, 524 F.3d 1229, 1232 (11th Cir. 2008))).

## CONCLUSION

Accordingly, Plaintiff's Complaint (Dkts. 1, 1-1) is **DISMISSED without prejudice**.  The Clerk is **DIRECTED** to enter judgment accordingly, to terminate any pending motions and deadlines, and to close this case.

**ORDERED** in Orlando, Florida, on January 24, 2025.

_____
JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record
Unrepresented Party